## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MARCELLA MANOCK,<br>　　　　Appellant, | DOCKET NUMBER<br>PH-0432-13-0293-I-1 |
| 　　　v. | |
| DEPARTMENT OF STATE,<br>　　　　Agency. | DATE: July 23, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Joel J. Warne</u>, San Francisco, California, for the appellant.

<u>Haley B. Shellito</u>, and <u>Jessee Alexander-Hoeppner</u>, Washington, D.C., for
the agency.

<u>Svetlana Uimenkova</u>, Esquire, Boston, Massachusetts, for amicus curiae,
The Disability Law Center, Inc.


### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member


### FINAL ORDER

¶1　　　The appellant has filed a petition for review of the initial decision, which affirmed her removal for unacceptable performance under chapter 43 and denied her affirmative defenses of age and disability discrimination.  Generally, we grant

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to: (1) clarify that the appellant's performance was unacceptable in at least one critical element of her position; (2) find that the appellant failed to establish that the agency committed harmful error; and (3) change the grounds for finding that the appellant failed to establish her affirmative defense of disability discrimination, we AFFIRM the initial decision.

## BACKGROUND

¶2  The appellant was a GS-9 Passport Specialist with the agency. Initial Appeal File (IAF), Tab 1 at 1, Tab 13 at 297. In February 2011, the appellant's supervisor issued her a summary rating of "not successful" for the performance evaluation period ending December 31, 2010. IAF, Tab 12 at 52, 58. In response, the appellant asserted that she had been unable to perform successfully due to "medical issues." *Id.* at 59.

¶3  Approximately 4 months later, on June 6, 2011, the agency notified the appellant that it would place her on a 45-day performance improvement plan (PIP) based upon her unsuccessful performance in two out of three components of

one of the critical elements of her position. *Id.* at 53-55; IAF Tab 15 at 92-93, 134-36. Specifically, the agency notified the appellant that her performance was unsuccessful in Critical Performance Element 1, Employee Work Commitments and Standards, Work Commitment 1a, which required her to apply citizenship law, passport regulations, and procedural guidance, and to evaluate the sufficiency of evidence submitted in support of passport applications. IAF, Tab 15 at 92, 134-35. The agency further notified the appellant that her performance was unsuccessful in Critical Performance Element 1, Employee Work Commitments and Standards, Work Commitment 1c, which required her to meet production quotas in adjudicating passport applications and specify maximum allowable rates for certain types of errors in adjudicating the applications. *Id.* at 92, 135-36.

¶4    The agency enclosed a 1-page Reasonable Accommodation Request form with the PIP letter, and advised that, if the appellant suffered from a medical condition and wanted to request reasonable accommodation, she should complete and submit the form "as soon as possible but no later than 15 days from the start of the PIP." *Id.* at 93, 139. On July 6, 2011, 20 days after the PIP began, the appellant emailed her supervisor, stating that she was awaiting the results of a sleep study and "may need some accommodations." IAF, Tab 12 at 244, Tab 15 at 84. The appellant's supervisor responded that requests for accommodation should be made through the agency's Disability Reasonable Accommodation Division (DRAD). IAF, Tab 12 at 243.

¶5    The next day, the appellant called the agency's Human Resources Office to discuss her PIP and her medical issues. IAF, Tab 57 at 19. In response, a Reasonable Accommodation and Disability Coordinator emailed the appellant 18 days later to offer the appellant "assistance with reasonable accommodations should [she] wish to pursue." *Id.* The Coordinator also sent the appellant another copy of the Reasonable Accommodation Request form. IAF, Tab 58 at 4. The appellant responded that she was awaiting additional information from her doctor.

*Id.* The appellant did not submit a Reasonable Accommodation Request form and has not asserted that she provided the agency with additional information regarding her medical condition prior to the conclusion of the PIP. *See* IAF, Tab 61 at 19, 26, Tab 63; *see also* Petition for Review (PFR) File, Tab 1.

¶6    After the PIP concluded, the appellant's supervisor notified her that her performance in components 1a and 1c of the Work Commitment critical element remained unacceptable. IAF, Tab 15 at 91. Approximately 6 months later, the agency proposed the appellant's removal, based on her unacceptable performance during the PIP. IAF, Tab 14 at 76-85. In response to the notice of proposed removal, the appellant stated that her performance had been affected by medical conditions, she was unaware that she could request a reasonable accommodation during the PIP, and she wanted to request a disability retirement.[2] *Id.* at 21-25, 75. After considering the appellant's responses, the agency issued a decision to remove her, effective June 4, 2012. IAF, Tab 13 at 297, 299-304, Tab 14 at 4-7.

¶7    The appellant filed an equal employment opportunity (EEO) complaint regarding her removal, which the agency failed to resolve within 120 days. IAF, Tab 4 at 4, Tab 8 at 13; *see* 5 C.F.R. § 1201.154(b)(2) (if the agency has not resolved or issued a final decision on a formal complaint of discrimination within 120 days, the appellant may appeal the matter directly to the Board any time thereafter). Subsequently, the appellant filed a timely Board appeal challenging her removal and raising affirmative defenses of discrimination based on age and disability ("stress issues," chronic obstructive pulmonary disease, emphysema, and Bird Fancier's Lung).[3] IAF, Tab 1 at 1, 3, 5, Tab 57 at 4-7, Tab 63 at 4-12.

---

[2] The appellant applied for disability retirement, and the Office of Personnel Management approved her disability retirement application. Hearing Transcript (HT) at 260-61, 275.

[3] Bird Fancier's Lung is an allergic inflammatory lung condition caused by inhaling particulate substances from birds. Stedman's Medical Dictionary, 1122 (28th ed. 2006).

¶8    Following a hearing, the administrative judge issued an initial decision affirming the appellant's removal and denying her affirmative defenses.  IAF, Tab 74, Initial Decision (ID).[4]

¶9    The appellant has filed a timely petition for review.  PFR File, Tab 1.  The agency has responded to the petition for review.  PFR File, Tab 10.  In addition, the Disability Law Center, Inc. (DLC) has filed an amicus curiae brief, and the agency filed a timely response to the amicus curiae brief. [5]  PFR File, Tabs 13, 15; *see* PFR File, Tab 12 at 2.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶10    In a performance-based action taken under chapter 43, such as this one, an agency must prove by substantial evidence that:  (1) the Office of Personnel Management approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of her performance during the appraisal period and gave her a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element.  *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013).  On review, the appellant does not challenge the administrative judge's finding that the agency met its burden of proof in a chapter 43

---

[4] On review, the appellant does not challenge the administrative judge's findings regarding her age discrimination claim.  PFR File, Tab 1; ID at 18.  We see no basis to disturb these findings.

[5] The appellant has submitted two additional pleadings in reply to the agency's response to the amicus brief.  PFR File, Tab 16 at 4, Tab 17 at 4.  We did not authorize the appellant to reply to the agency's response to DLC's amicus brief and, to the extent that she is also responding to DLC's brief, her response is untimely filed without good cause shown.  *See* PFR File, Tabs 12, 14, Tab 16 at 4, Tab 17 at 4.  We have reviewed these submissions, in any event, and find that they either repeat the appellant's contentions in her petition for review or reiterate the arguments that DLC presented in its amicus brief.

performance action here, and we see no basis to disturb those well-reasoned findings on review.[6]  PFR File, Tabs 1, 8; ID at 4-13.

<u>The agency did not commit harmful error when it failed to bargain over Standard Operating Procedures (SOP).</u>

¶11      On review, the appellant argues that a new decision by the Federal Labor Relations Authority (FLRA) demonstrates that her performance standards were implemented "in violation of law" because the agency refused to negotiate with her union regarding a proposal that would have "given all passport specialists, including [the appellant], additional time to adjudicate applications."[7]  PFR File,

---

[6] However, we modify the administrative judge's erroneous referral to the appellant's performance as unacceptable in two critical elements.  ID at 13.  The record reflects that Work Commitments 1a and 1c were components of critical element 1, Employee Work Commitments and Standards.  IAF, Tab 12 at 53-54, 58.  Therefore, the appellant's performance was unacceptable in one critical element only.  Nonetheless, this error was not prejudicial to the appellant's substantive rights.  *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).  Failure to demonstrate acceptable performance under a single critical element will support a removal under chapter 43.  *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 29 n.12 (2013); *see Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 36 (2010) (holding that an agency must prove by substantial evidence that failure on some, but not all, of the components of a critical element is failure on the entire element by presenting evidence that the appellant knew or should have known of the significance of the components and evidence of the importance of the components to the critical element as a whole); IAF, Tab 15 at 92-93, 134-36; HT at 66, 135, 147-48.

[7] The appellant has moved for leave to submit this FLRA decision on review.  *See* PFR File, Tab 8.  We GRANT her motion.  *See Curtin v. Office of Personnel Management*, 846 F.2d 1373, 1378-79 (Fed. Cir. 1988) (holding that the Board has discretion to make evidentiary rulings in the course of proceedings before it); 5 C.F.R. § 1201.115(e) (providing that the Board has authority to consider any issue in an appeal before it).  Because the decision is publicly available on the FLRA website, we have taken official notice of it, and it is unnecessary for the appellant to submit a physical copy.  *See* 5 C.F.R. § 1201.64 (allowing the Board to take official notice of matters that can be verified); *see also United States Department of State Passport Services & National Association of Government Employees, Local R4-78, AFL-CIO*, Case No. WA-CA-11-0109, 2014 WL 2917661 (F.L.R.A. June 13, 2014).

Tab 8 at 4. Because the FLRA decision was issued after the initial decision, it appears that the appellant is arguing that her petition for review should be granted because of new and material evidence. *See* 5 C.F.R. § 1201.115(d).

¶12    The Board generally will not consider evidence submitted for the first time on review absent a showing that: (1) the documents and the information contained in the documents were unavailable before the record closed despite due diligence; and (2) the evidence is of sufficient weight to warrant an outcome different from that of the initial decision. *See Carson v. Department of Energy*, 109 M.S.P.R. 213, ¶ 21 (2008), *aff'd*, 357 F. App'x 293 (Fed. Cir. 2009); *see also* 5 C.F.R. § 1201.115(d). Here, the parties presented evidence and argument regarding the FLRA complaint at issue during the Board hearing. *See* HT at 11-12, 89-91, 96-97. However, the FLRA decision itself post-dates the initial decision, and the information that the FLRA found to determine that the agency failed to bargain over the SOP is new. We find, though, that the appellant has failed to demonstrate that the FLRA decision is of sufficient weight to warrant an outcome different from that of the initial decision.[8] *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision).

---

In her motion for leave, the appellant also presents an argument that she did not raise in her petition for review. *See* PFR File, Tab 1, Tab 8 at 4-5 & n.1. She contends that the administrative judge erred in finding that a different 2013 arbitration decision regarding 2012 performance standards for Passport Specialists was not relevant because the appellant was evaluated during the PIP under the 2011 standards. *Id.*; *see* ID at 6; *see also* IAF, Tab 18 at 4-16; HT at 100-01. Because the appellant presented a similar argument below, we GRANT her leave to present the argument regarding the 2013 arbitration decision on review. *See* IAF, Tab 18 at 3, Tab 63 at 15. However, having considered the appellant's argument, we discern no basis to disturb the administrative judge's conclusion that the 2013 arbitration decision is not relevant to the instant appeal. *See* ID at 6.

[8] Because we find that the FLRA decision is not material to the outcome of her appeal, we do not address the agency's argument that the appellant did not act with due diligence to discover its existence. *See* PFR File, Tab 11 at 4-5.

¶13        The FLRA decision did not make any findings regarding the validity of the performance standards for Passport Specialists. *See United States Department of State Passport Services & National Association of Government Employees, Local R4-78, AFL-CIO*, Case No. WA-CA-11-0109, 2014 WL 2917661. Instead, an FLRA administrative law judge found that the agency committed an unfair labor practice when, in July 2010, it implemented certain changes to an SOP that Passport Specialists use in adjudicating passport applications without engaging in union negotiations. *Id.* at 1-4, 6-10. The administrative law judge ordered the agency to bargain with the union upon request regarding the impact and implementation of the July 2010 changes to the SOP. *Id.* at 10-11.

¶14        We interpret the appellant's argument that the performance standards were in violation of law as an allegation of harmful procedural error.[9] *See Slavich v. Social Security Administration*, 102 M.S.P.R. 171, ¶ 8 (2006) (applying a harmful error standard to an appellant's claim that her performance standards were invalid because the agency did not comply with the terms of a collective bargaining agreement in creating the standards); *see also DeSousa v. Agency for International Development*, 38 M.S.P.R. 522, 526 (1988) (applying a harmful error standard to an appellant's claim that an agency violated a collective bargaining agreement in establishing his performance standards). To establish harmful error, the appellant must demonstrate that it is likely that the error affected the outcome of the action before the agency. *See Jimenez-Howe v. Department of Labor*, 35 M.S.P.R. 202, 205-06 (1987); *see also* 5 C.F.R. § 1201.56(c)(1) (an appellant bears the burden of proving harmful error).

¶15        Here, the appellant has not asserted that she was unaware that she was expected to apply the SOP, as modified in July 2010, in adjudicating passport

---

[9] PFR File, Tab 8 at 1; 5 U.S.C. § 7701(c)(2)(A)-(C); *see Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 683-84 (1991) (an appealable action should be reversed as being "not in accordance with law" if the agency's action is unlawful in its entirety, i.e., if there is no legal authority for the action).

applications when her performance was evaluated under the PIP. *See* PFR File, Tabs 1, 8. Furthermore, she has not presented any evidence that her performance would have been acceptable if she had adjudicated passport applications under the former version of the SOP. *Id.* Accordingly, we find that the appellant has failed to establish harmful error regarding the failure to bargain at issue in the new FLRA decision.

The appellant did not establish that the agency discriminated against her by failing to accommodate her disability.

¶16     On review, the appellant and DLC argue that the administrative judge erred in finding that the appellant failed to request a reasonable accommodation. PFR File, Tab 1 at 4-8, Tab 13 at 3-15. Both DLC and the appellant contend that the appellant's July 2011 emails to her supervisor and the agency's Reasonable Accommodation and Disability Coordinator constituted a request for reasonable accommodation.[10] PFR File, Tab 1 at 7-8, Tab 13 at 12-13. DLC also argues that the agency knew that the appellant suffered from a disability prior to placing her on the PIP and should have engaged in an interactive process to determine an appropriate accommodation. PFR File, Tab 13 at 6-7, 9-10, 13-14. In addition, the appellant contends that her response to the notice of proposed removal

---

[10] Alternatively, the appellant and DLC argue that the statement in the PIP letter that the appellant could request a reasonable accommodation "no later than 15 days from the start of the PIP" caused her to believe that she could not request an accommodation later in the PIP process. PFR File, Tab 1 at 5, 8, Tab 13 at 10-11. During her hearing and deposition testimony, the appellant testified that she did not recall reading the information regarding reasonable accommodation in the PIP letter. *See* HT at 269-70; *see also* IAF, Tab 61 at 18-19. Moreover, the appellant's July 2011 correspondence with her supervisor and the Reasonable Accommodation and Disability Coordinator appear to indicate that the agency would have considered a request for reasonable accommodation that was submitted later than 15 days after the start of the PIP. *See* IAF, Tab 12 at 243, Tab 57 at 19, Tab 58 at 4. However, the appellant's response implied that she was waiting for more medical information. IAF, Tab 58 at 4 ("I see my lung doctor tomorrow, so I will know a little more then. I am really not sure . . . if there is something I need to ask for. . . . I should find out what is going on with my breathing issues now at this appointment."). Accordingly, we find that the appellant failed to establish that she was confused or misled regarding her ability to request a reasonable accommodation during the PIP.

constituted a request for reasonable accommodation, which the agency was obligated to consider, because she was still an employee when she responded. PFR File, Tab 1 at 7-8.

¶17    We find that we need not resolve the issue of whether the appellant requested a reasonable accommodation because we disagree with the administrative judge's conclusion that the appellant established that she was a qualified individual with a disability.[11]  *See* ID at 21.  An agency is required to provide reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 10 (2014).  With exceptions not applicable here, the term "qualified" means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position the individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position.  29 C.F.R. § 1630.2(m).  Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions, or reassignment to a vacant position whose duties the employee can perform. *Clemens*, 120 M.S.P.R. 616, ¶ 10.

¶18    The appellant bears the burden of proving that she is a qualified individual with a disability i.e., a disabled individual who can perform the essential functions of her position, with or without reasonable accommodation. *See Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 24 (2006); *see also* 29 C.F.R. § 1630.2(m).  We agree with the administrative judge's finding, for the reasons set forth in the initial decision, that the appellant established that she is an individual with a disability because her medical conditions substantially limit her

---

[11] In the initial decision, the administrative judge did not explain the basis for this finding.  *See* ID at 21.

major life activities.  *See* ID at 21; *see also* IAF Tab 12 at 132, 134, 141; 29 C.F.R. § 1630.2(g)(1) (defining "disability").  However, we disagree with the administrative judge's finding that the appellant established that she could perform the essential functions of her position, either with or without accommodation.

¶19     We find that Critical Element 1, Employee Work Commitments and Standards, was an essential function of the appellant's position.  *See* IAF, Tab 12 at 53-54 (setting forth Critical Element 1).  The term "essential function" means the fundamental job duties of the position the individual with a disability holds, not including marginal functions.  29 C.F.R. § 1630.2(n)(1).  It includes those duties that are the reasons for which a position exists.  *See* 29 C.F.R. § 1630.2(n)(2)(i); *see also Clemens*, 120 M.S.P.R. 616, ¶ 6.  Here, the agency presented evidence that the purpose of the Passport Specialist position is to determine the entitlement of applicants for U.S. passports and to facilitate legitimate travel to and from the United States.  *See* IAF, Tab 12 at 52; HT at 66.  Thus, the purpose of the position is to perform the function of Critical Element 1, which required the appellant to apply law, regulations, and guidance to determine if applicants were entitled to passports, and efficiently and accurately adjudicate passport applications.[12]  *See* IAF, Tab 12 at 53-54, Tab 15 at 134-35.

¶20     It is undisputed that the appellant was unable to demonstrate successful performance in both qualitative and quantitative performance standards of Work Commitments 1a and 1c of Critical Element 1 during the PIP.  To demonstrate successful performance in Work Commitment 1a, the appellant could make no

[12] In addition, an employer's judgment is relevant evidence to be considered in determining whether a function is essential.  29 C.F.R. § 1630.2(n)(3)(i).  Here, the fact that the agency designated Critical Element 1 as a critical element demonstrates that the agency considered it to be an essential function.  *See* 5 C.F.R. § 430.203 (defining a critical element as a work assignment or responsibility of such importance that unacceptable performance on the element would result in a determination that an employee's overall performance is unacceptable).

more than six significant knowledge errors when adjudicating passport applications during the PIP.[13] IAF, Tab 15 at 134-35. The agency demonstrated that the appellant made forty-seven significant knowledge errors. IAF, Tab 14 at 78-82, 99-111, Tab 15 at 4-13. Work Commitment 1c specified that, among other things, the appellant was required to adjudicate an average of sixteen to eighteen new passport applications[14] per hour, and an average of thirty-four to thirty-eight renewal passport applications[15] per hour, and set forth maximum rates of certain other types of errors that she could not exceed. IAF, Tab 15 at 135-36. The agency established that the appellant adjudicated only an average of 8.78 new passport applications, and 18.41 renewal passport applications, per hour during the PIP, and exceeded the maximum rate of each of the error types addressed under Work Commitment 1c. IAF, Tab 14 at 83, Tab 15 at 33-34, 37-60.

¶21        As a result, we find that the appellant failed to establish that a reasonable accommodation would have enabled her to satisfy the performance standards in Work Commitments 1a and 1c. The appellant asserts that the agency could have accommodated her by moving batches of passport applications that she was required to adjudicate closer to her desk. *See* PFR File, Tab 1 at 8; *see also* HT at 242. However, as discussed above, the appellant's performance was significantly deficient in qualitative, as well as quantitative, aspects of a critical element of her position, and she has not adequately explained how an accommodation would have resolved these deficiencies. To prevail on a claim of disability discrimination, the appellant cannot merely articulate an

---

[13] A significant knowledge error is an error that violates one of the components of Work Commitment 1a, and is equivalent to issuing a passport where one should not be issued, or in the absence of sufficient information to determine whether it should have been issued. HT at 72-73.

[14] The performance standard referenced "DS-11 passport applications," which are submitted by first-time applicants or applicants who have not held a passport in 15 years. IAF, Tab 14 at 135 of 157; HT at 87.

[15] The performance standard referenced "DS-82 passport applications," which are passport renewal applications. IAF, Tab 14 at 135 of 157; HT at 87.

accommodation, but instead, must prove that the accommodation would enable her to perform the essential duties of her position. *See Paris*, 104 M.S.P.R. 331 at ¶ 24. Based upon the evidence that the appellant elected to present on this issue below, we find that she failed to prove that her articulated accommodation would enable her to meet her performance standards.

¶22       However, this does not end the inquiry of whether the appellant is entitled to an accommodation. She also would be entitled to be considered for reassignment to a vacant funded position for which she was otherwise qualified as a form of reasonable accommodation. *See Gonzalez-Acosta v. Department of Veterans Affairs*, 113 M.S.P.R. 277, ¶ 14 (2010); *see also* 29 C.F.R. § 1630.2(o)(2)(ii), (q). At hearing, the appellant testified that after her unsuccessful performance appraisal in 2010, she asked her supervisor if she could reduce her pay grade to assist her in meeting her production quotas. HT at 256. Yet, the appellant has not established that any vacant, funded positions at a lower pay grade were available. *See Jackson v. U.S. Postal Service*, 79 M.S.P.R. 46, 53-54 (1998) (in a disability discrimination claim, the appellant bears the ultimate burden of proving that vacant, funded positions for which she was otherwise qualified were available). Furthermore, she has not presented any evidence regarding the essential duties of a Passport Specialist at a lower pay grade, or that she would have been able to perform those duties, either with or without accommodation. Accordingly, we find that the administrative judge correctly determined that the appellant failed to meet her burden of proof on her affirmative defense of disability discrimination.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color,

religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:               _____
                                       William D. Spencer
                                       Clerk of the Board

Washington, D.C.