NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PAULA K. LUA,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT**
*Respondent*

---

2015-3158

---

Petition for review of the Merit Systems Protection Board in No. SF-0845-15-0244-I-1.

---

Decided: December 9, 2015

---

PAULA K. LUA, Los Angeles, CA, pro se.

KARA M. WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., FRANKLIN E. WHITE, JR.

---

Before LOURIE, BRYSON, and STOLL, *Circuit Judges.*

PER CURIAM.

Paula K. Lua ("Lua") appeals from the final decision of the United States Merit Systems Protection Board (the "Board") affirming a decision of the Office of Personnel Management ("OPM") finding that she had been overpaid $19,154.83 in annuity benefits under the Federal Employees' Retirement System ("FERS") and that she is not eligible for a waiver of repayment. *See Lua v. Office of Pers. Mgmt.*, No. SF-0845-15-244-I-1, 2015 WL 1888712 (M.S.P.B. April 22, 2015). Because the Board did not err in affirming OPM's decision, we *affirm*.

## BACKGROUND

Lua worked for the United States Postal Service for more than eleven years. Respondent's Appendix ("R.A.") 35. She was placed on leave without pay on January 27, 2000, and was separated for disability retirement on September 9, 2001. R.A. 57. Her disability retirement application was approved in August 2004, and made effective starting on the day after her last day in a pay status; that is, January 27, 2000. R.A. 23, 33. OPM accordingly used her salary on January 26, 2000 to calculate her retroactive and ongoing FERS benefits. R.A. 35. As a result, Lua received $30,169.25, after taxes, premiums, and insurance, as retroactive benefits for the time between when she was taken off of pay status and when she was granted disability retirement, in addition to ongoing benefits. R.A. 39. Lua was also sent a letter in August 2004 indicating that she had to notify OPM if she received social security benefits in the future because any social security award would reduce her FERS disability benefits. R.A. 23.

During a routine check of Social Security Administration records in April 2014, OPM discovered that Lua had been receiving social security benefits since October 1, 2011. R.A. 48. Despite the August 2004 letter, Lua failed to inform OPM that she was receiving those benefits. As

a result, OPM calculated that it had overpaid Lua $19,154.83, and sought repayment of that amount.

As repayment may be waived in certain circumstances, Lua sought reconsideration of OPM's determination in April and May 2014. OPM denied reconsideration, but offered to reconstitute the collection into 188 monthly installments of $100.00, and a final installment of $32.08. R.A. 61.

Lua did not accept the installment agreement, and instead appealed OPM's reconsideration decision to the Board in January 2015. Her case was assigned to Administrative Judge ("AJ") Anthony L. Ellison, who previously issued an initial decision in another case involving Lua. Lua moved that Judge Ellison be disqualified on the basis of bias, but that motion was denied.

The AJ issued an initial decision finding that OPM had met its burden of establishing the existence and amount of overpayment, and that Lua knew or should have known that she received overpayment of benefits. R.A. 5–11. Specifically, the AJ found that OPM had established that Lua was receiving both FERS and social security benefits from October 11, 2011 until April 2014, and so her FERS benefits should have been reduced. R.A. 7–8. The AJ did not accept Lua's argument, also raised here, that OPM had, in fact, underpaid her benefits from the beginning. R.A. 8–9.

The AJ also found that Lua was not without fault in the creation of the overpayment because Lua was notified in advance of her obligation to inform OPM if she began receiving social security benefits. R.A. 9–10. Although Lua claimed not to have received that notification, the AJ found that she provided no evidence in support of that claim. R.A. 9. Moreover, although Lua testified at the hearing that she had not received the August 2004 letter containing the notification, she had nevertheless

acknowledged before the hearing that she had received the letter. *Id.*

Finally, the AJ found that recovery of the overpayment would not be against equity and good conscience because Lua did not submit an updated financial resources questionnaire to support her financial hardship claim. R.A. 10–11.

Lua did not seek review by the full Board, and so the AJ's initial decision became the final decision of the Board. 5 C.F.R. § 1201.113. Lua then timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a Board decision is limited. We can set aside the Board's decision only if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2006); *see Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dickey v. Office of Pers. Mgmt.*, 419 F.3d 1336, 1339 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Lua does not appear to contest the amount that OPM calculated as overpayment, but instead argues that repayment should be waived. The government responds that the Board correctly determined that Lua is not eligible for waiver.

Recovery of an overpayment may be waived only when "the individual is without fault and recovery would be 'against equity and good conscience.'" *King v. Office of Pers. Mgmt.*, 730 F.3d 1342, 1347 (Fed. Cir. 2013) (quot-

ing 5 U.S.C. § 8470(b)).  Recovery is against equity and good conscience (1) when it would cause financial hardship; (2) when the recipient can show that she relinquished a right or changed position due to the payment or notice of payment; or (3) when repayment would be unconscionable. *Id.*; 5 C.F.R. § 845.303.  The recipient of the overpayment bears the burden of establishing by substantial evidence that waiver is appropriate.  *King*, 730 F.3d at 1348 (citing 5 C.F.R. § 831.1407(b)).

We agree with the government that substantial evidence supports the Board's finding that Lua was not without fault for the overpayment.  The Board considered evidence, in the form of Lua's testimony at the prehearing conference, that she had received the letter outlining her responsibility to report social security benefits should she receive them.  This letter put Lua on notice that such reporting was necessary.  Lua's lack of action after being notified led directly to the overpayment; therefore, she was not without fault.

Lua also argues that OPM actually underpaid her from the beginning, because it used January 27, 2000, the day after her last date on paid status, to calculate her highest average salary, rather than September 9, 2001, the day after her date of separation.  The government responds that the regulations allow benefits to begin on either date, and that its decision to select the earlier date was not arbitrary or capricious because the earlier date provided Lua with an additional twenty months of benefits.

An annuity "commences on the day after the employee separates *or* the day after pay ceases and the employee meets the requirements for title to an annuity." 5 C.F.R. § 844.301 (emphasis added).  Accordingly, we agree with the government that the regulations expressly authorize beginning Lua's annuity on January 27, 2000, the day after her pay ceased.  Moreover, the decision to commence

benefits on that date was not arbitrary or capricious because it allowed Lua to collect twenty months of benefits to which she would not otherwise have been entitled. At the time, Lua appeared to recognize that commencing benefits on that date worked to her advantage, as she did not object to the situation until OPM requested repayment of overpaid benefits.

Finally, Lua argues that the AJ was biased against her. The government responds that Lua has provided insufficient evidence of bias.

"[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion *unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.*" *Bieber v. Dep't of Army*, 287 F.3d 1358, 1363 (Fed. Cir. 2002) (emphasis added) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). We agree with the government's arguments. Lua does not identify any statements or evidence that would support a conclusion that the AJ displayed any kind of favoritism or antagonism, and so does not begin to approach the evidentiary threshold required to show a kind of favoritism or antagonism which made fair judgment impossible. The record in the present case establishes that the AJ applied settled law to the facts of Lua's case, and that his conclusions based on those facts were supported by substantial evidence.

## CONCLUSION

We have considered Lua's remaining arguments, but find them unpersuasive. For the foregoing reasons, the decision of the Board is affirmed.

## AFFIRMED

COSTS

No costs.